﻿Citation Nr: AXXXXXXXX
Decision Date: 08/27/19 Archive Date: 08/27/19

DOCKET NO. 190215-3185
DATE: August 27, 2019

ORDER

An initial increased rating for post-traumatic stress disorder (PTSD), evaluated as noncompensable from June 25, 2009 to August 15, 2016, and 70 percent from August 15, 2016, is denied.

An initial increased rating for bilateral lower sensory neuropathy, evaluated at 10 percent from June 25, 2009 to October 3, 2018, and 20 percent from October 3, 2018 is denied.

An initial increased rating for a bilateral foot disorder (claimed as onychomycosis), in excess of 10 percent is denied.

FINDINGS OF FACT

1. For the period from June 25, 2009 to August 15, 2016, the probative evidence of record shows that the Veteran’s service-connected psychiatric disability was diagnosed, but that his symptoms were not severe enough either to interfere with occupational and social functioning or to require continuous medication. 

2. From August 15, 2016, the probative evidence of record shows that the Veteran's service-connected psychiatric disability manifested no worse than occupational and social impairment with deficiencies in most areas.

3. For the period from June 25, 2009 to October 3, 2018, the probative evidence of record shows that the Veteran’s service-connected bilateral lower sensory neuropathy, has been manifested by symptoms that are, at most, mild in severity. 

4. From October 3, 2018, the probative evidence of record shows that the Veteran’s service-connected bilateral lower sensory neuropathy, has been manifested by symptoms that are, at most, moderate in severity.

5. Throughout the appeal period, the Veteran's onychomycosis has not affected 20 to 40 percent of the entire body, or 20 to 40 percent of exposed areas affected, and systemic therapy such as corticosteroids or other immunosuppressive drugs has not been required. 

CONCLUSIONS OF LAW

1. The criteria for entitlement to an initial increased rating for PTSD, evaluated as noncompensable from June 25, 2009 to August 15, 2016, and 70 percent from August 15, 2016, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.3, 4.7, 4.130, Diagnostic Code (DC) 9411.

2. The criteria for entitlement to an initial increased rating for bilateral lower sensory neuropathy, evaluated at 10 percent from June 25, 2009 to October 3, 2018, and 20 percent from October 3, 2018, have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 3.159, 4.3, 4.7, 4.14, 4.21, 4.124a, DC 8520.

3. The criteria for entitlement to an initial rating in excess of 10 percent for a bilateral foot condition, claimed as onychomycosis, have not been met. 38 U.S.C. § 1155; 38 C.F.R. §§ 4.1, 4.7, 4.118, DC 7806.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service from July 1968 to July 1970. Effective October 2018, the Veteran is in receipt of a 100 percent combined schedular evaluation.

On August 23, 2017, the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 2017), also known as the Appeals Modernization Act (AMA) is in effect. This law creates a new framework for Veterans dissatisfied with VA's decision on their claim to seek review. The Veteran chose to participate in VA's test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran selected the Supplemental Claim lane when he submitted the RAMP election form. Accordingly, the January 2019 RAMP rating decision considered the evidence of record prior to the issuance of the RAMP rating decision. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). 

Increased Ratings

Disability ratings are determined by the application of VA's Schedule for Rating Disabilities (Schedule), which is based on the average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155 (2012); 38 C.F.R. Part 4 (2017). Pertinent regulations do not require that all cases show all findings specified by the Schedule, but that findings sufficient to identify the disease and the resulting disability and, above all, coordination of the rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21.

When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3. Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings," in all claims for increased ratings. Fenderson v. West, 12 Vet. App. 119, 126-27 (1999).

In rating disabilities of the musculoskeletal system, it is necessary to consider, along with the schedular criteria, functional loss due to flare-ups of pain, fatigability, incoordination, pain on movement, and weakness. DeLuca v. Brown, 8 Vet. App. 202 (1995). The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated innervation, or other pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40. Pain on movement, swelling, deformity, or atrophy of disuse as well as instability of station, disturbance of locomotion, interference with sitting, standing, and weight bearing are relevant considerations for determination of joint disabilities. 38 C.F.R. § 4.45. Painful, unstable, or malaligned joints, due to healed injury, are entitled to at least the minimal compensable rating for the joint. 38 C.F.R. § 4.59; Burton v. Shinseki, 25 Vet. App. 1 (2011) (holding that 38 C.F.R. § 4.59 applies to disabilities other than arthritis). However, painful motion alone is not a functional loss without some restriction of the normal working movements of the body. Mitchell v. Shinseki, 25 Vet. App. 32, 43 (2011).

1. Entitlement to an initial increased rating for PTSD, evaluated as noncompensable from June 25, 2009 to August 15, 2016, and 70 percent from August 25, 2016, is denied. 

The Veteran seeks entitlement to an initial increased rating for PTSD, evaluated as noncompensable from June 25, 2009 to August 15, 2016, and 70 percent from August 25, 2016.

Psychiatric disorders, such as PTSD, are rated pursuant to the criteria under 38 C.F.R. § 4.130, DC 9411. See General Rating Formula for Rating Mental Disorders (General Rating Formula). Relevant to the issue on appeal, under the General Rating Formula, a noncompensable rating is assigned when a mental condition has been formally diagnosed, but symptoms are not severe enough to either interfere with occupational and social functioning or to require continuous medication. 

A 10 percent disability evaluation is warranted for occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational task only during periods of significant stress, or; symptoms controlled by continuous medication. Id. 

A 30 percent rating is assigned when there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal, due to such symptoms as: depressed mood; anxiety; suspiciousness; weekly or less often panic attacks; chronic sleep impairment; or mild memory loss, such as forgetting names, directions, recent events. Id. 

A 50 percent rating are occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks (more than once a week); difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. Id. 

A 70 percent rating is assigned where there is objective evidence demonstrating occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control, such as unprovoked irritability with periods of violence; spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances, including work or a work-like setting; and the inability to establish and maintain effective relationships. Id. 

The next higher and maximum 100 percent rating is warranted when there is total occupational and social impairment, due to such symptoms as persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living, including maintenance of minimal personal hygiene; disorientation to time and place; memory loss for names of close relatives, own occupation, or own name. Id. 

Symptoms listed in the General Rating Formula are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). Accordingly, the evidence considered in determining the level of impairment under 38 C.F.R. § 4.130 is not restricted to the symptoms provided in the diagnostic code. Id. Instead, VA must consider all symptoms of a claimant's condition that affect the level of occupational and social impairment. Id. 

For claims for higher initial ratings, evidence obtained during the appeal period may indicate that the degree of disability increased or decreased during the pendency of the appeal. In such circumstances, VA's determination of the "present level" of a disability may result in a conclusion that the disability has undergone varying and distinct levels of severity throughout the entire time period the rating claim has been pending, and "staged" ratings may be assigned. Fenderson v. West, 12 Vet. App. 119, 126 (1999).

After a thorough review of the evidence of record, the Board concludes that a disability evaluation higher than noncompensable is not warranted for the Veteran's service-connected PTSD prior to August 15, 2016.

In a March 2010 PTSD evaluation, the examiner opined that the Veteran does not have symptoms meeting the criteria of any mental health disorder, including PTSD. The examiner also opined that the Veteran does not have impairment in functioning.

During the examination, the examiner noted that the Veteran appeared clean, neatly groomed, and casually dressed. The examiner noted that the Veteran displayed unremarkable psychomotor activity. The Veteran's speech was noted as spontaneous. The examiner noted that his attitude was cooperative, affect was appropriate, mood was good, attention was intact, was well oriented, and had unremarkable thought process and content. The examiner noted that the Veteran's judgment was such that he understands the outcome of his behavior. He noted the Veteran was of average intelligence and aware of his current circumstances. The examiner noted that the Veteran enjoys socializing with friends, likes to hunt and fish, and said that he enjoys church, Sunday School, and likes to dine out. No history of violence or suicide attempts were noted.

In a mental health status examination in a September 2015 mental health outpatient note, the examiner noted the following: the Veteran was alert and polite with good eye contact and rapport; his speech was of normal rate, rhythm, and volume; his affect was broad and appropriate; he was able to smile and had a good sense of humor; his thought process was linear, logical and goal-oriented; his thought content indicated no suicidal or homicidal ideation; except for flashbacks, the Veteran denied auditory or visual hallucinations; no delusional thoughts were endorsed; and his cognition, insight, and judgement were grossly intact.

In a January 2016 VA medical record, the Veteran stated that PTSD has affected his decision-making abilities, job functioning, and attitude. He stated that he has intrusive thoughts of Vietnam daily. The examiner noted the following: the Veteran is insightful; he expressed desire/motivation for change; he is employed; he has supportive family and/or friends; he has leisure or recreational interests; he has available spiritual support; he has hope; he is involved in his community; he is resilient; he has good hygiene and grooming; he is friendly and has strong personal and/or spiritual values; he is independent; and he has ability to work effectively with other people.

In a February 2016 VA medical record, the Veteran stated that he has flashbacks and nightmares, and that he is startled by loud noises. He stated that he is on high alert and does not trust others. He also stated that he has intrusive thoughts about traumatic experiences.

The evidence on record indicates that throughout this period, the Veteran's symptoms most closely resemble his current noncompensable rating for this period. The Board finds that, throughout the relevant rating period, the Veteran's service-connected PTSD manifestations were, at worst, not severe enough to interfere with occupational and social functioning or to require continuous medication.

The Board assigns significant probative value to the medical evidence and clinical findings in the record, which noted the Veteran's specific reported symptoms. These symptoms include the Veteran's reported nightmares and flashbacks. As explained in detail above, the clinical findings, including the Veteran's reported symptoms, suggest symptoms that are most consistent with a noncompensable disability rating.

Overall, the Veteran consistently reported socializing with his friends and his community. He reported enjoying leisure activities, and he reported an ability to work effectively with other people. Throughout the medical record, the Veteran is noted as logical and insightful, interacting appropriately with providers, and at all times he has been appropriate in his appearance. While he reported nightmares and flashbacks, there is no indication that the Veteran’s symptoms have been severe enough to interfere with occupational and social functioning. Therefore, a rating higher than noncompensable from June 25, 2009 to August 15, 2016 is not supported by the evidence.

The Board has considered the Veteran's contention that his PTSD during this period warrants a rating higher than noncompensable. However, the Veteran was able to establish and maintain relationships with his friends, family, church and community. The Veteran is a member of his church, he is involved in his community, and he enjoys dinning out. Thus, the evidence of record does not indicate that the Veteran had symptoms that were severe enough to interfere with occupational and social functioning during this period.

The record does not reflect that the Veteran had symptoms severe enough to interfere with occupational and social functioning during this period. Therefore, the Veteran's service-connected PTSD does not warrant a higher disability rating for the period from June 25, 2009 to August 15, 2016.

Further, the evidence does not show that a staged initial rating greater than 70 percent is warranted from August 15, 2016 to the present.

In an August 2016 VA examination, the Veteran was noted as experiencing severe psychosocial and environmental problems. The examiner summarized the Veteran’s level of occupational and social impairment as occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/ or mood. The examiner noted that severe anxiety, avoidance, impaired concentration, and increased arousal are all attributable to the Veteran’s PTSD. The examiner based his opinion on an in-person interview, review of accurate history, and review of the record. 

The Veteran exhibited memory of names of close relatives, own occupation, and own name. The Veteran did not exhibit circumstantial, circumlocutory or stereotyped speech. He did not exhibit intermittent illogical, obscure, or irrelevant speech. He did not exhibit impaired judgment or gross impairment in thought processes or communication. He did not exhibit obsession with rituals which interfere with routine activities. He did not exhibit persistent delusions or hallucinations. He did not exhibit grossly inappropriate behavior and is in no persistent danger of hurting himself or others. He did not exhibit neglect of personal appearance for hygiene. He was oriented to time and place. 

The examiner determined that the Veteran had "occupational and social impairment with deficiencies in most areas" which is consistent with his current 70 percent rating for this period.

Other evidence in the record, including VA Treatment records from August 15, 2016 through the present indicate that the Veteran's PTSD manifestations are in line with his current 70 percent rating. 

The clinical findings, including the Veteran's reported symptoms, at most, occupational and social impairment with deficiencies in most areas, are most consistent with a disability rating of no greater than 70 percent.

During this period, the Veteran reported symptoms consistent with his current 70 percent rating such as near-continuous panic or depression affecting the ability to function independently, difficulty adapting to stressful circumstances, chronic sleep impairment, and intermittent inability to perform activities of daily living. Thus, the Veteran's PTSD represents, at worst, an occupational and social impairment with deficiencies in most areas from August 15, 2016 through the present.

There is no indication of symptoms that would justify a higher 100 percent rating as the record does not indicate a total occupational and social impairment which would justify the next higher and maximum 100 percent rating. However, the record indicates, and the Veteran has consistently denied having, persistent delusions or hallucinations or any inclination toward hurting himself or others. The record contains no evidence of grossly inappropriate behavior, nor any intermittent inability to perform activities of daily living, including maintenance of minimal personal hygiene. In contrast, the Veteran has presented with adequate dress and hygiene at all times. Further, there is no indication that the Veteran has ever been disoriented to time or place, nor that he has ever experienced memory loss for names of close relatives, his own occupation, or his own name.

The Veteran's PTSD represents, at worst, an occupational and social impairment with deficiencies in most areas from August 15, 2016 through the present and a 70 percent rating is appropriate. 

A disability rating greater than noncompensable for PTSD from June 25, 2009 to August 15, 2016, and a staged initial rating greater than 70 percent for the period from August 15, 2016 through the present is not warranted. The preponderance of the evidence is against the claim, and there is no doubt to be resolved. See 38 C.F.R. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

2. Entitlement to an initial increased rating for bilateral lower sensory neuropathy, evaluated at 10 percent from June 25, 2009 to October 3, 2018, and 20 percent from October 3, 2018, is denied. 

The Veteran seeks entitlement to an initial increased rating for bilateral lower sensory neuropathy, evaluated at 10 percent from June 25, 2009 to October 3, 2018, and 20 percent from October 3, 2018.

Under DC 8520, complete paralysis of the sciatic nerve, where the foot dangles and drops, no active movement is possible of muscles below the knee, flexion of the knee is weakened or (very rarely) lost, warrants an 80 percent rating. Severe incomplete paralysis with marked muscular atrophy warrants a 60 percent rating. Moderately severe incomplete paralysis warrants a 40 percent rating. Moderate incomplete paralysis warrants a 20 percent rating. Mild incomplete paralysis warrants a 10 percent rating.

Terms such as "mild," "moderate," "moderately severe," and "severe" are not defined in the Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." See 38 C.F.R. § 4.6.

The term "incomplete paralysis," with this and other peripheral nerve injuries, indicates a degree of lost or impaired function substantially less than the typical picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. 38 C.F.R. § 4.124a. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. Id.

After a thorough review of the evidence of record, the Board concludes that a disability rating higher than 10 percent is not warranted for the Veteran's service-connected bilateral lower sensory neuropathy prior to October 3, 2018.

In a February 2010 neurological examination, the examiner noted abnormal sensation in the bilateral lower extremities. The peripheral nerve examination revealed bilateral neuralgia. Sensory dysfunction was noted as demonstrated by bilateral distal lower extremity light touch and pinprick. No motor dysfunction was noted.

In a July 2015 neurology consultation, the examiner noted the following: the Veteran's gait and station were normal and his balance was good; his muscle strength and tone were good; his sensation was described as with a reduction in pinprick sensation below the knees all the way to the feet and toes, but his position and vibratory senses appeared to be intact; his bilateral lower coordination was intact; deep tendon reflexes were noted as absent diffusely, his plantars were noted as downgoing; and his straight leg raising was noted as negative.

In an October 2016 VA examination, the examiner noted that the Veteran did not have constant or intermittent pain in his bilateral lower extremities. However, the examiner noted that the Veteran experiences paresthesias and/or dysesthesias and numbness in his bilateral lower extremities. Upon muscle strength testing, the Veteran exhibited normal strength in bilateral knee extension, and bilateral ankle plantar flexion and dorsiflexion. No muscle atrophy was noted. Bilateral knees and ankles were evaluated as hypoactive. The sensory examination revealing decreased sensation in bilateral thigh/knee, lower leg/ankle, and foot/toes. No trophic changes were noted. The Veteran's gait was observed as normal. The sciatic nerve severity evaluation resulted in incomplete paralysis, mild in severity, bilaterally. No functional impairment was noted.

In a February 2018 VA examination, the examiner noted that the Veteran did not have constant pain in his bilateral lower extremities. However, the examiner noted mild intermittent pain bilaterally. Paresthesias and/or dysesthesias was noted as mild bilaterally. Numbness was noted as moderate bilaterally. Upon muscle strength testing, the Veteran exhibited normal strength in bilateral knee extension. The examiner noted that both the left ankle plantar flexion and dorsiflexion were of normal strength. The right ankle plantar flexion and dorsiflexion were noted as having active movement against some resistance. No muscle atrophy was noted. Bilateral knees and ankles were evaluated as hypoactive. The sensory examination revealed decreased sensation in bilateral thigh/knee, lower leg/ankle, and foot/toes. No trophic changes were noted. The Veteran's gait was observed as normal. The sciatic nerve severity evaluation resulted in incomplete paralysis, mild in severity, bilaterally. No functional impairment was noted. All other lower extremity nerve testing revealed normal results.

The evidence on record indicates that throughout this period, the Veteran's symptoms most closely resemble his current 10 percent rating for this period. The Board finds that, throughout the relevant rating period, the Veteran's service-connected bilateral lower sensory neuropathy manifestations were, at worst, mild in severity with no evidence of paralysis. Therefore, a rating higher than 10 percent from June 25, 2009 to October 3, 2018 is not supported by the evidence.

The Board has considered the Veteran's contention that his bilateral lower sensory neuropathy during this period warrants a rating higher than 10 percent. However, the Board affords great probative to weight to the medical evaluations of record. Thus, the evidence of record does not indicate that the Veteran had symptoms that approximate those contemplated by a higher rating during the relevant period. Therefore, the Veteran's service-connected bilateral lower sensory neuropathy does not warrant a higher disability rating for the period from June 25, 2009 to October 3, 2018.

Further, the evidence does not show that a staged initial rating greater than 20 percent is warranted from October 3, 2018 to the present.

In a November 2018 VA medical examination, the examiner noted that the Veteran did not have constant pain in his bilateral lower extremities. However, the examiner noted moderate intermittent pain bilaterally. Paresthesias and/or dysesthesias and numbness were noted as moderate bilaterally. Upon muscle strength testing, the Veteran exhibited normal strength in bilateral knee extension. The examiner noted normal bilateral ankle plantar flexion and dorsiflexion strength. No muscle atrophy was noted. Bilateral knees and ankles were evaluated as hypoactive. The sensory examination revealed decreased sensation in bilateral thigh/knee, lower leg/ankle, and foot/toes. No trophic changes were noted. The Veteran's gait was observed as normal. The sciatic nerve severity evaluation resulted in incomplete paralysis, moderate in severity, bilaterally. No functional impairment was noted. All other lower extremity nerve testing revealed normal results.

The evidence warrants a rating of 20 percent for the service-connected bilateral lower sensory neuropathy from October 3, 2018. There is no indication in the record that the Veteran's service-connected bilateral lower sensory neuropathy manifested in complete paralysis or in incomplete paralysis that was moderately severe or severe at any time during the relevant rating period. Peripheral neuropathy manifested by symptoms that are wholly sensory may be rated at most at the moderate level. 38 C.F.R. § 4.124a. While an examiner's characterization of the degree of disability is not binding on the Board, in this case it is consistent with the evidence of record, including the normal muscle strength testing and reflex findings on examination. See 38 C.F.R. § 4.10 (assigning to medical examiners the "the responsibility of furnishing... full description of the effects of disability upon the person's ordinary activity"); 38 C.F.R. § 3.100(a) (delegating the Secretary's authority "to make findings and decisions... as to the entitlement of claimants to benefits" to, inter alia, VA "adjudicative personnel"); 38 C.F.R. § 4.2 ("It is the responsibility of the rating specialist to interpret reports of examination... so that the current rating may accurately reflect the elements of disability present"). Based on the findings on VA examination in November 2018 and consistent with the remaining evidence, the Board finds the Veteran's symptoms warrant a 20 percent rating, for moderate sensory symptoms from October 3, 2018.

The Veteran's service-connected bilateral lower sensory neuropathy manifests, at worst, moderate in severity with no evidence of paralysis from October 3, 2018 through the present and a 20 percent rating is appropriate. 

Based on the foregoing, a disability rating greater than 10 percent for bilateral lower sensory neuropathy from June 25, 2009 to October 3, 2018, and a staged initial rating greater than 20 percent for the period from October 3, 2018 through the present is not warranted. The preponderance of the evidence is against the claim, and there is no doubt to be resolved. See 38 C.F.R. § 5107(b); Gilbert, 1 Vet. App. at 49.

3. Entitlement to an initial rating in excess of 10 percent for a bilateral foot condition, claimed as onychomycosis, is denied. 

The Veteran contends that his bilateral foot condition, claimed as onychomycosis, is worse than that contemplated by his current 10 percent rating. 

Under Diagnostic Code 7806, a 10 percent rating is warranted for dermatitis or eczema affecting at least 5 percent, but less than 20 percent, of the entire body or affecting at least 5 percent, but less than 20 percent, of the exposed areas; or requiring intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs for a total duration of less than six weeks during the past 12-month period.

A 30 percent rating is warranted for dermatitis or eczema affecting 20 percent to 40 percent of the entire body or affecting 20 percent to 40 percent of the exposed areas; or requiring systemic therapy such as corticosteroids or other immunosuppressive drugs for a total duration of six weeks or more, but not constantly, during the past 12-month period.

A maximum, 60 percent rating is warranted for dermatitis or eczema affecting more than 40 percent of the entire body or affecting more than 40 percent of the exposed areas; or requiring constant or near-constant systemic therapy such as corticosteroids or other immunosuppressive drugs during the past 12-month period. 38 C.F.R. § 4.118, DC 7806.

Diagnostic Code 7806 "draws a clear distinction between 'systemic therapy' and 'topical therapy' as the operative terms of the diagnostic code." Johnson v. Shulkin, 862 F.3d 1351, 1354 (2017). Specifically, "systemic therapy means 'treatment pertaining to or affecting the body as a whole,' whereas topical therapy means 'treatment pertaining to a particular surface area, [such] as a topical antiinfective applied to a certain area of the skin and affecting only the area to which it is applied." Id. at 1355. Although a topical treatment could meet the definition of "systemic therapy" if it were administered on a large enough scale such that it affected the body as a whole, this possibility does not mean that all applications of topical treatments amount to systemic therapy. Id. 

In an October 2016 VA examination, the examiner noted that at least 5, but less than 20 percent of the Veteran's total body area is affected by his skin condition. The examiner noted that the Veteran has not been treated with oral or topical medications in the past twelve months for any skin condition. The examiner noted that the Veteran has not had any debilitating or non-debilitating episodes in the past twelve months for any reason. The examiner noted that the Veteran does not have any other skin conditions. The examiner noted that the bilateral feet show toe nail thickening and discoloration.

The Board has considered the Veteran's contention that his onychomycosis warrants a rating higher than 10 percent. However, the evidence of record does not indicate that the Veteran has symptoms that approximate those contemplated by a higher rating during the relevant period. Therefore, the Veteran's service-connected onychomycosis does not warrant a higher disability rating at any time during the period on appeal.

As the Veteran's onychomycosis does not affect at least 20 percent of his total body area or 20 percent of his exposed body area, nor does it require corticosteroids or other immunosuppressive drugs, a higher 30 percent rating is not warranted. The preponderance of the evidence is against the claim, and there is no doubt to be resolved. See 38 C.F.R. § 5107(b); Gilbert, 1 Vet. App. at 49. 

 

Vito A. Clementi

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board T. T. Emmart, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.